May it please the Court, David Gauntlett for the appellant. I'd like to reserve three minutes. I have three reasons why I think reversal is appropriate I'd like to focus on. The first is that Vogue's advertisement of its organic Moroccan argan oil in close proximity to those of Moroccan oil at hair salons meets the more element, showing derogation by clear implication that was missing in Swift's. Sotomayor, before we get to that, do you want to talk about jurisdiction? Yes. I'd prefer not to spend an inordinate amount of time on it. We've presented our arguments on it. Well, if you – if there's no jurisdiction, it's not an inordinate amount of time. True, and that's why I brought a motion to the Court to try to resolve it before the need to bring it to a merits panel, but the Court decided to defer to you. But that would be for a merits panel, and we've got to resolve it. I understand. So bottom line is that 5-814, we file a lawsuit, 529 we amend it. As of that date, it appears that there were three limited partnerships with confidential members. Some of those members resided in Connecticut, and Connecticut is the principal place of business of Hartford. And we didn't know that at the time when we filed the case in federal court. It only came to light subsequently when a distinct action brought by Vogue, also against Hartford related to a different underlying lawsuit, was prosecuted in the Middle District of Florida, in Tampa, and the Court asked us to establish that, in fact, the LLC, which was defended in that suit, had appropriate jurisdiction. We did an investigation. We had to look at confidential documents to recognize that, in fact, some of the members of some of the limited partnerships that were members of the LLC had personnel who were, in fact, residents of Connecticut. The court dismissed without prejudice based thereon. And so, obviously, I don't want to be in this court and have an order that I can't enforce if I'm successful, and I'm sure Hartford does not. So we think that's dispositive of the issue, which is what we said in the reply. I think what you've discovered is that one of Vogue's members, Carlisle Group, has, in its partnership, a partner who is a registered address in Connecticut. Yes. As of a certain date, which is not the date that's relevant, it's after the date that matters. Well, I think the reference at ER 31, paragraph 9 and 10, and 61 to 66 of the record suggests that that, the date that that existed was sometime in February, which would have predated the May 1814 lawsuit filing. It didn't come to light until much later that that was the case. And it doesn't say what kind of entity. It simply says it has a registered address, whatever this is, a partnership, a corporation, an individual. Yes, a hedge fund in Connecticut, and that's what Carlisle is, and Carlisle has members of the limited partnership, which are Connecticut residents, at least one was. Well, it doesn't say Connecticut registered, it says it has a registered address in Connecticut. Right. And the information that was provided to the Middle District in Florida had a declaration the one that was presented in connection with our motion to this court that had the same information. Part of the problem was it was a confidential document, and so getting more specificity would have required us getting a protective order to have even put before more specificity on that topic. But the information before us doesn't really answer the question, does it? As you suggest, you need more information before we could do that. That may be the case. And so... And if that's the case, wouldn't we be required to remand this or to conduct a hearing ourselves? That's one possibility, Your Honor. What's the other? To find that the showing is inadequate and dismiss without prejudice and then have us that we have the bona fides to not be in federal court and thereby not have a risk of removal. Counsel, didn't you drop the complaint for your client, Vogue? I did. And at the time, we had no knowledge that there was a limited partnership which had a confidential list of members. But don't you have to make that inquiry under Rule 11? My inquiry went to the client about the citizenship of the limited partners. We didn't have any information from the client about whether there was confidential documents that the client didn't have access to when it limited partners. You know what this looks like. You know what it looks like. It looks like you lost below and now you're coming up with... Not at all, Your Honor. I didn't want to be in state court in Florida. I was surprised to find out when we did the hard inquiry in the Middle District that, in fact, we couldn't meet the criteria to be in federal court. Once that became evident, I was duty-bound to tell this Court that there was a problem with diversity that I wasn't aware of previously. I prefer federal court as a venue. I always have. I've litigated lots and lots of coverage cases on these issues, and I wanted to be in federal court. I just didn't realize there was a problem with that particular limited partner because there was no way for me to get access to their place of business because it wasn't public record. My client didn't have it. And the limited partnership... Do you know, as of now, is that, in fact, a citizen of another state? I would have to subpoena the records from Latham & Watkins D.C. Council, who gave us the superficial level of information to get that knowledge about the specifics. This is about your own client, right? I understand that the client is an LLC, and one of the limited partners, Carlisle, is have the information maintained as confidential by that particular limited partnership. And so my client doesn't have direct access to that information itself. It just knows that it has a limited partnership. But in order to resolve the question of jurisdiction, that information has to be obtained, and then a determination has to be made. I understand. I'm just suggesting that... If I'm correct, then the question that I pose to you is we have two choices, either to remand and have the district court make that determination, obtain the information, and resolve whatever disputes go along in connection with that, or we have to become the fact-finding body and get the information and do it here. But one way or another, it has to be done, isn't it? Right. Well, the other possibility is that you take as sufficient what the middle district federal court judge thought was sufficient to dismiss without prejudice the case because you believe that there's a showing of a lack of diversity. In no event under any of those circumstances should we consider the merits.  I understand. All right. Well, let... Maybe we ought to just hear from your opponent, and if you both agree on that, then we can consider whether we want to hear the merits. Good afternoon, Your Honors. David Simanto for Hartford Casualty Insurance Company. With regards to the question of jurisdiction, I do not think that there's a need to remand or conduct a further hearing. There is an ambiguity when opposing counsel describes the LLC. There's in fact an original complaint that was filed by Todd Christopher, Inc., which is a Florida corporation. Todd Christopher, Inc. filed the complaint against Hartford on May 8th, 2014. Vogue LLC, which I believe is the LLC that's being referred to by opposing counsel, was the party that was involved in the Florida middle district against Hartford. Todd Christopher, Inc., the corporation, was not involved in that action. Todd Christopher, Inc. is a Florida corporation. There's full diversity. The fact that there was apparently a successor in interest to Todd Christopher, Inc., which was Todd Christopher International LLC, which was also a Florida entity, which was then converted to another successor in interest, which was Vogue LLC, which was a Delaware entity. This is in the opening brief on page 10 and 11 of Appellant. You're suggesting we should be looking at TCI, LLC's state of citizenship as opposed to Vogue's? At TCI, Inc.'s citizenship, because the sole test is whether there was diversity at the time in filing of the original complaint against Hartford. Everything else, substitution of parties, change of address, change of the nature of the plaintiff, does not change the fact that at the filing on May 8th, 2014, there was full diversity. The Todd Christopher, Inc. was described, both in the underlying action and in the original complaint on May 8th against Hartford, as Todd Christopher, Inc., doing business as Vogue International. Doing business as doesn't create a separate legal entity. It's simply another description for the original legal entity, which is Todd Christopher, Inc. That's in California and Florida, but that's the rule. Providence Washington Insurance Company v. Valley Forge, 42 Calab 4, 1194, says in fact that. Doing business under another name does not create an entity distinct from the person operating the business. TCI, Inc. was the original plaintiff. Whether it had the ability to bring the lawsuit, whether it had standing to bring, ability to pursue the claim against Hartford is irrelevant to the test as to whether at the beginning on May 8th, 2014, there was full diversity. Once you establish diversity, that's what the U.S. Supreme Court and this Court has held, you then look at the ability to pursue the lawsuit and whether the successor interest should have been involved or not. But the fact is that a Florida corporation, Todd Christopher International, Inc., brought the original lawsuit on May 8th, not Vogue LLC. Regardless, even if you want to look at Vogue LLC, there's no description of when those different unknown members were added. There's no description as to what their citizenship is. It talks about registered address, but residence or address is not the test. Citizenship and domicile are the test. There's no evidence as to what the citizenship or domicile of those parties for Vogue LLC even was. And the fact that the Florida District Court decided in November to dismiss a case doesn't change, doesn't address the diversity of the parties involved in May of 2014 before the Central District here. So there is no need to remand. There is no need to conduct a further hearing. The only focus should be looking at who the original plaintiff in this lawsuit against Hartford was. That was Todd Christopher, Inc. It's a Florida corporation. It's not an LLC. There's no need to look at the LLC's members or the members of those members who are super secret and unknown. So you don't think that this even raises a question that we have to resolve? I do not, Your Honor. I believe that it's clear that there was full diversity between Hartford Casualty and Todd Christopher, Inc. on May 8, 2014, when Todd Christopher, Inc. sued Hartford in this case. The lawsuit in Florida involved Vogue, LLC, claiming to be successor in interest by various steps to Todd Christopher, Inc. And the decision that was made in Florida by the Florida District Court was involving whether there was diversity in November, a different time, between Hartford Casualty and Vogue, LLC, not between Hartford and Vogue, LLC. Well, I'm not suggesting that that decision is binding or that it necessarily is dispositive. What I'm asking is whether the facts that we have been advised of that arose out of that are sufficient to require an inquiry so that we have to answer that question to be satisfied that there is jurisdiction. I think that this Court can answer the question by looking at the complaint against Hartford, the original complaint against Hartford, which is the test. The original filing on May 8 by Todd Christopher, Inc., there's no need to look at anything else. It's not an LLC. There's no need to investigate who the members of the LLC are. It's a corporation, a Florida corporation. It filed suit against Hartford. Diversity established at the time of filing of the complaint. Isn't there a doctrine that says that if the merits are easy and the jurisdictional question is hard, we can sometimes skip over the jurisdictional question and go to the merits? Wouldn't it be your position that the easy way to do here is to just affirm the district court on the merits? I believe the merits in this case are easy. This has been a continuous fight between Hartford and they ensured as to whether selling the shampoos that my wife actually happened to use and calling it organic somehow disparages anybody and repeatedly courts have found that it does not. It's the end of the discussion. I think that I think both are easy in this case for this court, both the diversity question and the merits. I thought that we were no longer allowed to assume jurisdiction. And that's why, Your Honor, I think both questions can be answered both in favor of jurisdiction and in the favor of lack of coverage. There is jurisdiction. But do you think we can just ignore the question of jurisdiction because the merits are easy? No, Your Honor. I think that both questions are easy and you can address the jurisdiction by finding that there was diversity between Hartford and Todd Christopher, Inc., which was the plaintiff when the original complaint was filed against Hartford. The Vogue LLC did not show up as a substitute plaintiff until the amended complaint was  You've answered the question, I think. Thank you, Your Honor. Thank you. Do you want to proceed to the merits or do you want to say something about jurisdiction? Well, let's start with jurisdiction. Yeah, I think we need to stay with jurisdiction. You can't skip jurisdiction. It's something you have to address. And what he's missing, what Hartford is missing, is that on 829.13, TCI became TCI LLC. And on 216.14, TCI LLC became Vogue International LLC. So as of May 18th, the successor entity, and it was a merger, was in existence. There was an error by our office initially on May 18th in filing a lawsuit in the name of TCI, which was corrected on May 29th, hence the need for the First Amendment complaint, before any ruling, before any merits were reached. And that clarified that, in fact, the party legally entitled to pursue at that point in time was, in fact, Vogue International LLC. Thus, its citizenship was germane. So you're saying the original complaint, May 8th, what year? Was filed in the name of Todd Christopher. What year? 5-8-14. 14. So that was a mistake, you're saying? It was an error, which was why it was corrected within a couple weeks to restate the proper plaintiff as Vogue International LLC, because that transition had already occurred on February 6th, 2014. So at the time, Vogue was actually the entity. It was. Unfortunately, our client didn't tell us that, and so we found out about it after we filed the suit. The client didn't tell you that. No. So it happens. And so as soon as we learned that, then we filed in federal court. And, of course, we didn't also know, because they didn't know, that the Carlisle entity had members who were limited partners who were resident in Connecticut. That didn't come about until much later in 2014 through the Middle District of Florida. So while I would prefer to get to the merits, I don't know that you can. I think you have to deal with jurisdiction first, which is why I brought the motion to the merits panel to make sure that we wouldn't waste the time of a full panel if we could avoid it. I wish. Do you want to discuss the merits? Sure. Why don't we wait a little bit? Maybe we should discuss the merits just a little bit. All right. Take a few minutes. Okay. So let me start off where I was before. Getting to the merits, I think there's three reasons why the district court erred. First, that Vogt's advertisement of its organic Moroccan Iocran oil products in close proximity to those of Moroccan oil at hair salons, suggesting, and this is from the complaint, paragraph 20, suggesting that the ITCU's products are an alternative to Moroccan oil products, meets the more element showing derogation by a clear implication that was missing in SWIFT. And if you think about an alternative, that is inconsistent with the notion of mere consumer confusion because it offers a distinct product. Second, in the alternative, under offense F, copying another's advertising ideal or style of advertisement, that's satisfied as the district court conceded by the allegations distinct from labeling of products that there was advertising of products using Moroccan oil. I'm sorry? Why doesn't the IP exclusion apply? That's my third point. And the reason is because you look at Waller v. Truck Insurance Exchange. You first look at what the exclusion starts with. This insurance does not apply to, in quotes, personal and advertising injury. It's in quotes. So you have to find injury arising out of one of those two offenses. That conduct and that conduct alone is the only one that you then mix with the IP exclusion. And as I've suggested, there is disparagement conduct falling within the counts for unfair competition and false advertising that are distinct from trademark. And if you look at the land decision by Judge Krauske in 2002, it says it has to apply in all possible worlds. That's the exclusion. Well, one possible world is one where there will be no trademark, no trade dress, and only unfair competition based on suggesting that the accused products are an alternative to Moroccan oil. People go to the hair salon, a bunch of blue bottles. One of them says Moroccan oil. The other has Vogue's or at the time Todd Christopher on it. And they both offer Moroccan agri-oil products. And one of them is organic, ours, so labeled and so advertised. And the other is not, and ours is better priced. And that whole proposition is also evidenced by extrinsic evidence that we were value competitors. We offered a value product through our advertising. And the Moroccan agri-oil phrase itself arguably is also within offense F, a copying of another's advertising idea because an advertising idea is defined by Hartford's policy as any idea for an advertisement. Well, that includes the idea that our product is Moroccan agri-oil and that that liability falls outside the exclusion. And you needn't look no further than the most recent case in my 28-J letter filed on the 16th of July to which Hartford elected no response, Hanover v. Anover Food. And it deals specifically with disparagement coverage and why it falls outside the IP exclusion. Now, it applied Florida law, but a lot of the statements it makes are very germane to the SWIFT analysis. It says it's enough for the insured to compare its product or service to its competitor or products or service in order to detract from the reputation of its competitor. Well, the comparison here is ours is organic, ours is better priced. You're sitting in the salon and they're suggesting that the accused products are alternatives. What they're suggesting is there may have been further oral statements, not in the complaint specified, but as in Michael Taylor referenced in the SWIFT case where they said customers were steered toward cheap synthetic knockoffs. Well, here what's obvious is those suggestions  Hey, look at this. Wow, what a bargain. And remember, one of the allegations is in effect a tarnishment allegation. It's not mere blurring. Yes, there are allegations of trademark. Yes, there are allegations of trade dress and there are blurring kind of allegations, but there's also tarnishment as well. And indeed, you'll see a lot of dilution cases and trademark where both are involved because you can both have misperceptions of consumers that this may be an affiliated product with the first one, which could lead to blurring. C, offense F, or tarnishment because you think less of the other product because this product is organic and it's less expensive and therefore you prefer it. I think we've spent enough time on the merits but we have to give your opponent a chance to discuss the merits briefly also. Thank you, Your Honor. A couple of quick points. In our opposition to the motion to dismiss based on lack of jurisdiction, I believe it's S.E.R. 20, we discussed the case law that TCI, Inc., even if it was not, even if there had been a successor interest at that time, still chose to file a lawsuit against Hartford, Asda, and a converted entity, an inactive corporation can still file a lawsuit. It may not be able to proceed on its own on the merits, but it can actually file a lawsuit. Okay, so that's the answer. As regards to the points raised with regards to the merits, one comment is the allegation in the complaint that Vogue said it was an alternative to the claimant's product, the Moroccan oil's product. Alternative is not disparagement. In Swift, the California Supreme Court discussed the dispute between ulticart and multicart. And in that one, the court described as such, Ultimate was marketing a knockoff of the multicart. And then they talked about how the designs were made to be indistinguishable. If a knockoff was decided by the California Supreme Court not to be disparagement, saying that you are an alternative, it doesn't say you're a better alternative or you are a cheaper alternative. It just says alternative is not disparagement. There are a lot of other terms used during argument and in the briefs by Vogue, such as better price, aggressively priced, being that we are the only organic. None of those terms show up anywhere in the record. The only person that mentions the word aggressively priced or better priced is Vogue. Claimant never made any of those allegations. And counsel for the insured or the insured itself cannot create facts that create coverage. In terms of Michael Taylor, in Michael Taylor there were discussions about allegations that the insured has steered customers by bait and switch. And the court and ultimately this court found that while it was a very close call, it fairly implied that some negative statements were made. The California Supreme Court has said that the test is not fairly implied but clear implication. In fact, the language is stronger than that. It says that it must specifically refer to the plaintiff's product or business and clearly derogate that product or business. Each requirement must be satisfied by express mention or clear implication. Clear implication means more than a statement that may conceivably or plausibly be construed as derogatory to a specific product or business. It means that it has to be a clear or necessary inference. Based on that language in the California Supreme Court's decision in Swift and the fact that the court even referenced that whatever merits the district court decision in Michael Taylor, which was the one that everyone discussed may have, Michael Taylor is no longer good law in our opinion and we would ask the court to make that point because the test that it uses fairly implied is no longer an issue. In any event, the fact pattern on Michael Taylor is not alleged anywhere in the record. The only where it's discussed is in the briefs of Vogue and those arguments do not create facts that create coverage. Thank you, counsel. The case just argued will be submitted. The court will stand in recess for the day.
judges: Reinhardt, Kozinski, Wardlaw